Byron MOSER, Plaintiff-Respondent,

v.

**D. O. WILLIAMS, Defendant-Appellant.**

No. 33194.

St. Louis Court of Appeals.

Missouri.

June 13, 1969.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for defendant-appellant.

Lashly, Caruthers, Rava, Hyndman & Rutherford, Darold E. Crotzer, Jr., St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This case, involving an action for an accounting brought by one member of a partnership against the other, comes to the writer by a recent reassignment. The chancellor entered a judgment in favor of

plaintiff for $5,040.16, together with interest of $2,236.33, or a total of $7,276.49, and defendant appealed.

It was alleged by plaintiff in his petition, and conceded by defendant in his answer, that in 1952 the parties formed a partnership for the purpose of investing in a tract of land of approximately six acres, located in St. Louis County; that they agreed that any profits or losses resulting from their investment would be· divided equally between them; and that by their mutual agreement title to the property was placed in the name of defendant. Plaintiff further alleged that on or about April 1960, defendant sold the land at a profit; and that defendant did not render an adequate accounting of the same to plaintiff or pay the full sum due plaintiff, but rather attempted to make a complicated distribution of the funds without the advice and consent of plaintiff. Plaintiff's prayer was for a decree requiring the defendant to account for his acts and actions in the sale of their jointly held property, and for a judgment for such sum as the court might find due to plaintiff on the accounting, together with interest thereon.

In addition to the admissions noted, defendant in his answer denied that there had been a sale of a partnership asset by defendant, and denied that defendant had failed to account to plaintiff in any manner for the distribution of gross funds realized from the sale of a partnership asset. Further, by way of affirmative allegations, defendant pleaded that he and plaintiff had entered into a contract on February 12, 1960, for the sale of plaintiff's one-half interest in the property to defendant for the sum of $15,000; that thereafter defendant had tendered to plaintiff a partial sum for plaintiff's interest in the land, subject to a final determination as to adjustments; that plaintiff thereafter stated he would not comply with the contract made between them on February 12, 1960; and that defendant stood ready and willing to pay the balance due under that agreement, but that plaintiff refused to accept any payment un-

der the terms of the contract. Defendant also alleged, "* * * that the sale of the property described in plaintiff's amended petition was negotiated and consummated subsequent to the making of the aforesaid contract between plaintiff and defendant and that by virtue thereof plaintiff is not entitled to any of the proceeds of said sale." Plaintiff filed no reply.

Prior to the time the case was called for trial written interrogatories had been propounded and answers thereto made, and a pretrial conference had been held by the court. While the information thus disclosed is not set forth in the transcript, during the discussion which ensued at the beginning of the hearing it was agreed that defendant had sold the land to a purchaser for $36,192.71. And the parties further agreed, to quote from defendant's brief:

"* * * it was agreed by the parties that plaintiff would be entitled to an accounting from defendant unless the affirmative allegations of defendant's Paragraph 5 relating to the sale of the partnership interest by plaintiff to defendant were proved by defendant, in which case no accounting would be required.

"It was also agreed that the real property was ultimately sold by defendant for $36,192.71 and that if plaintiff's theory of the case were correct, plaintiff would be entitled to $6,552.60 principal less $1500.00 paid on account, for a balance of $5,052.60.

"If defendant's theory of the case were correct and he actually purchased plaintiff's one-half interest in the partnership prior to the ultimate sale of the real property, he would owe to plaintiff the sum of $1,912.50, which amount was received by plaintiff by checks from defendant but not cashed by plaintiff."

Thus the case devolved into the decisive issue of whether, as defendant had affirmatively alleged, he had contracted to purchase plaintiff's interest in the partnership property prior to the time he "negotiated

and consummated" the sale to the third party.

Tacitly agreeing with the court's observation that defendant bore the burden of proof on that issue, defendant presented his evidence first. The substance of defendant's evidence, as gleaned chiefly from defendant's own testimony, is that plaintiff had sent defendant two letters, both dated February 9, 1960, in which plaintiff offered to sell his one-half interest in the partnership land for $15,000, provided that the offer was accepted on or before February 13, 1960. On February 12, 1960, defendant mailed plaintiff a letter in which he accepted plaintiff's offer. On the same day, February 12, 1960, defendant entered into a contract to sell the six acres to the B'nai El Amoona Congregation for $6,000 an acre, conditioned upon the Congregation securing a permit from the governing authorities to erect a temple and affiliated school building. The sum of $1650 as earnest money was placed in escrow by the Congregation on or about February 19, 1960, and the sale to it was closed on April 15, 1960, at which time defendant received the $36,192.71 previously mentioned.

After defendant's sale of the land to the Congregation had been closed and the consideration received by him, defendant, on April 18, 1960, sent plaintiff a check for $1500, together with a statement which showed that after adjustments for a deed of trust on the property and other items defendant remained indebted to plaintiff for $912.50 on the sale of plaintiff's one-half interest for $15,000. Plaintiff returned the check, and on June 11, 1960, defendant by letter sent three checks to plaintiff, in the amounts of $500.00, $912.-50 and $500.00, respectively. Plaintiff received but did not deposit the checks, and this litigation followed.

Defendant admitted, on cross-examination, that he did not tell plaintiff on February 12, 1960, or at any other time, that he was selling or was about to sell the property to the B'nai El Amoona Congregation for $6,000 per acre.

At the conclusion of defendant's evidence plaintiff orally moved for a directed verdict. After hearing arguments thereon the court took the motion under submission, discontinued the hearing of further evidence at that time, and four days later entered the following judgment:

" 'It appearing to the Court that defendant contracted to sell partnership real estate prior to contracting to buy interest of plaintiff, motion for directed verdict of plaintiff at close of defendant's evidence, having been heretofore submitted, is hereby sustained. Judgment in favor of plaintiff and against defendant in the sum of $5,040.16, plus interest from April 15, 1960 at 6% per annum in the sum of $2236.33, aggregating $7,276.49, and costs. Signed.' "

Defendant's sole point on appeal is that the court prejudicially erred in sustaining plaintiff's motion for a directed verdict because the uncontroverted evidence showed that defendant did not contract to sell the partnership land to the B'nai El Amoona Congregation prior to the time he accepted plaintiff's offer to sell plaintiff's interest in the property. Defendant concedes that both transactions occurred on the same day, February 12, 1960, as he testified, but he argues that there was no direct evidence of the sequence in which such contracts were made on that day; and that defendant was entitled to the favorable inference that his acceptance of plaintiff's offer was made prior to the time he executed the contract with the Congregation because, as he states, "On a motion for directed verdict, the trial Court must consider as true the evidence of the party against whom the motion is directed, and said party is entitled to all favorable inferences from the evidence."

 It will be noted that defendant's only complaint of error is that the court erred in sustaining plaintiff's motion for a directed verdict, and that no claim is made that the chancellor erred in rendering the judgment and decree in favor of plaintiff.

Actually, plaintiff's motion was not one for a directed verdict, but rather, under the circumstances here existing, it was in the nature of a motion to dismiss or a motion for judgment. This for the reason that plaintiff's action was one in equity, Bass v. Daetwyler, Mo.App., 305 S.W.2d 339; Neville v. D'Oench, 327 Mo. 34, 34 S.W.2d 491; and a motion for a directed verdict, like our old demurrer to the evidence, has no place in an equity case. Civil Rules 72.01, 72.02, V.A.M.R.; Sloan v. Dunlap, 354 Mo. 1211, 194 S.W.2d 32; Fullerton v. Fullerton, 345 Mo. 216, 132 S.W.2d 966. However, our 1943 Code of Civil Procedure, § 510.140, RSMo 1949, V.A.M.S., now Civil Rule 67.02, authorized motions to dismiss at the conclusion of a plaintiff's evidence in a nonjury case, Rigg v. Hart, Mo., 255 S.W.2d 778. And when either a demurrer to the evidence under our pre-1943 Code, or a motion to dismiss under our 1943 Code, was filed in an equity case the effect was to submit the case to the court, Sloan v. Dunlap, supra; Fullerton v. Fullerton, supra; Rigg v. Hart, supra. And under such circumstances, as stated in Rigg, 255 S.W.2d 779, "* * * a trial court has the right to weigh the evidence and decide the case against plaintiff and on appeal the case is reviewed de novo. * * *"

■ It is obvious from the judgment entered by the chancellor that he did weigh the evidence and that he found the decisive issue in favor of the plaintiff. For the judgment reads, " 'It appearing to the Court that defendant contracted to sell partnership real estate prior to contracting to buy interest of plaintiff, * * *.' " In the light of that finding the question as to whether the court erred in adding that the motion for a directed verdict was sustained is academic. Upon review de novo, after a consideration of all of the evidence, we concur in the opinion reached by the chancellor. Defendant admitted that the parties were partners, and as such a fiduciary relationship existed between them. Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584. Accordingly, defendant was under the duty to exercise the utmost good faith in his relations with plaintiff. Thomas v. Milfelt, Mo.App., 222 S.W.2d 359. As defendant himself testified, he entered into a contract with B'nai El Amoona Congregation to sell the partnership property, at a profit, on the same day he accepted plaintiff's offer to sell his interest in the partnership land. Defendant admitted that he did not, either at that or any subsequent time, inform plaintiff of his contract with the Congregation by which defendant stood to make a profit. Certainly, under those circumstances, suspicious on their face, the burden was on defendant to show that he had, in good faith, accepted plaintiff's offer before he was aware of or actually entered into the contract he made with the Congregation. Defendant, in sole possession of knowledge as to the actual facts concerning the decisive issue, not only failed to testify regarding the sequence of those events, but on cross-examination revealed that the Congregation, through a broker, before February 12, 1960, had made repeated offers to defendant, none of which, so far as the record shows, were communicated by defendant to plaintiff. If defendant is entitled to the benefit of any inference it is no more than a "reasonable inference," Black v. Kansas City Southern Ry. Co., Mo., 436 S.W.2d 19, 23, and when all of the facts and circumstances in evidence are considered it would violate the bounds of reasonableness and rationality to sustain the inference for which defendant contends.

■ Furthermore, while the case was tried below and decided on the issue of which contract was made first, we are of the opinion that plaintiff was entitled to prevail in any event. While defendant's acceptance of plaintiff's offer occurred on February 12, 1960, defendant did not seriously attempt to complete the purchase of plaintiff's interest until April 18, 1960, after defendant closed his sale to B'nai El Amoona Congregation on April 15, 1960. In the interim the land remained partnership property, defendant prevailed upon plaintiff to sign a renewal note of the deed

of trust which encumbered the property, and defendant never at any time disclosed to plaintiff that he had agreed to sell the partnership land to the Congregation at a profit to himself. Under virtually the same circumstances it was held in Burgess v. Deierling, 113 Mo.App. 383, 88 S.W. 770, that the partner who had realized the undisclosed profit was required to account to his partner for one-half thereof.

For the reasons stated the judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY, J., concur.